Good morning. Illinois Appellate Court, First Division. Court is now in session. The First Division, the Honorable Justice John Griffin presiding, case number 1-9-1-4-1-4, Satchel versus Village of Melrose Park. Hi, welcome everybody. Thank you for joining us and we'll all get through this. What I'd like to do now is ask that the attorneys that are going to spell your name for the record. Good morning, Your Honor. Christopher Cooper, C-H-R-I-S-T-O-P-H-E-R-C-O-O-P-E-R. And Patrick O'Connor for the defendants. Okay, you each get 20 minutes. Does the appellant want to reserve any time? If I may, Your Honor, at least 10 minutes. Okay, so you're going to reserve 10 minutes. And now what we'll do, if you want to get people's attention, probably the best thing is to wait. We don't want to be talking over each other or anything and it's been working out pretty good. But anyway, so if somebody's waiting a little bit, we'll know what they want to do. All right, counsel, you want to want to proceed? I want to say good afternoon, Justice Pierce. Good afternoon. I do think it's necessary, since the public may be listening through YouTube, to just offer a little bit of background, if I may. This case is about police officers and their right to a legitimate process joined with due process and disciplinary proceedings. And in this case, as I do for a living, I stand on the side of the police. I represent plaintiff's schedule through the Fraternal Order of Police. Where a police board lacks authority to act, but it acts anyway, as is the landscape in this matter, a police officer is denied a legitimate administrative disciplinary process. Schedule was subjected to an administrative process before a board lacking in authority to act. And as Daniels and his progeny teaches us, void boards produce void orders. Every action against plaintiff's schedule by the Fire and Police Board, right, or Board of Police Commissioners is void, since the board lacked authority to act. So can I just ask one quick question here? Because in a footnote, they say that Mr. Schedule was hired by this board. You know, if I may, Your Honor, and I know it's not a good idea to point the cases from the year 1120, but this court did just that in Castronova v. Murkowski, M-U-R-A-W-S-K-Y, 120 Northeast, 2nd, 871, 1954 case, citing to 1120, the year 1120, Holman v. Johnson, 98, 1120. And the purpose was to assert that a party, right, who acts with unclean hands, whose party's intent is to violate the law, should not benefit. There should be no victories in this case. In other words, it would be on the absurd side of things to say that every promotion should be voided, or that every person hired by example Officer Schedule should now, you know, find himself unemployed. So I think we need to look also to Jaffe Commercial Finance v. Harris, 119 Appellate 3rd, 136 at page 140, which once again points out that a party cannot take advantage of his or her own wrong. But isn't there, there's a, there's a concept in the law called revestment, and that's when, you know, when the case is DWP'd, nobody pays attention to that, everybody goes along, and then later you can't say gotcha. Isn't that kind of the situation here where, you know, I understand your argument, but putting a shoe on the other foot, that, you know, you could just take advantage of it, and then when it doesn't, you can say gotcha. I don't, I don't see it that way, your honor. I see it as the village in Melrose Park, I can't say who specifically, but the village embarked on a an illegal crusade, and the reality is, yes, some people were hired, Scatchel was one of them, some people were promoted, but in some cases when we take away someone's livelihood, and when we apply Goldberg v. Kelly, and we look at Goldberg v. Kelly and its progeny as the degree of due process available to a recipient, where you take one's livelihood, I think that that's where perhaps we have a double standard, but we must have a double standard. There must be a way for a person who loses their employment in the circumstances for which we are here today to assert, hey, the board that fired me was illegal, without putting him or herself in the position where he or she loses employment or suddenly converts to an employee at will. Okay, should I continue, your honor? Sure, thanks. All right, so here's sort of the the gravamen of it all. The defendants concede that the Board of Fire and Police Commissioners was in fact abolished through Ordinance 1613. That's undisputed. However, the defendants, joined with the circuit court, essentially say, hey, the board came back to life. It was revived by way of a resolution, okay? And then, of course, we know the circuit court throws in that, you know, you can do whatever you want if you're a home rule jurisdiction, and I'll talk about that in a moment, but I do want to make crystal clear, as I've made clear in my briefs, an ordinance may be repealed, modified, or amended only by municipal action of like dignity, citing the Naperville Police Union versus City of Naperville. So the plaintiff takes the position that well-settled doctrinal lessons and logic, joined with the Naperville Police Union decision, and there are others, remind us that ordinances cannot be amended or modified by a resolution. And that's crystal clear here. This is dispositive in this case. A resolution is an act of lesser dignity than an ordinance. Now, in the instinct case, there is a bevy of evidence that there was never an intent by the village. Mr. Cooper, it's clear that your argument is that the resolution did not modify the because it can. Okay, that's fine, but that's your argument. So are you are you also saying then that it did revive the Board of Fire and Police Commissioners? I'm not saying it revived anything. The defendants assert that it did. So what are you, what do you propose that the resolution, you believe the resolution did what, nothing? The resolution did nothing. If you take the position that there was a personnel board, let's say hypothetically there really is a personnel board, but again, Melrose Park says, you know, in response to the FOIA request, we don't have one. Let's say hypothetically we take the position there's a personnel board. Look closely at the resolutions. The resolutions speak directly about the Board of Fire and Police Commissioners. The resolutions have no... It does, it does, but I'm asking if it becomes a matter of semantics. If you have, for example, a board of citizenry and you subsequently change that board to something else and all the people are still on the same board and then there's some sort of resolution that subsequently follows and the resolution says that we're giving these funds to the Board of Residents. So you're saying that the new resolution which gives the money to the Board of Residents as opposed to stating that, I'm sorry, where the old name was the Board of Citizenry, but the name has been changed to the Board of Residents. So if they give the money to the Board of Citizenry, that resolution does nothing and the Board of Residency would not be entitled to that money. That's what you're implying. I don't think that's analogous, Your Honor, all due respect. What happened in this situation is the Board was abolished and here's a great analogy. This is a perfect analogy. Well, in my case, the Board of Citizenry was abolished also. It became, they got a new board, the Board of Residents. The way I understand it. They subsequently give money and as opposed to giving it to the Board of Residents, they give it to the Board of Citizenry. I'm making all this up as I go. I had not thought about this scenario before these all started. I'm just trying to hear from you. What's the distinction? What's the problem there? Your Honor, I don't see it as the same thing. In your example, there's been a name change. What's happened here is far more than a name change and that's why I want to use the example of the first federal court in Illinois. So the first United States federal court in Illinois, it was the District of Illinois. So it's established in 1819. In 1855, by statute, by statute, that court was abolished. The District Court of Illinois was abolished on February 13, 1855. Thereafter, the northern and southern districts were established. Now, imagine a landscape post-1958 for at least eight years because that's how long this board has been, on the one hand, asserting that it's the Board of Fire and Police Commissioners. Now in the litigation, it takes a position that it's the Personnel Board. Imagine if for eight years post-1855, the landscape was one in which judges in the northern and southern districts of Illinois pronounced sentences as the District Court of Illinois, where a statute abolished the District Court of Illinois. Imagine edict after edict in opinion form where the court announces that it's the District Court of Illinois. That's the best way I can think to respond, Judge Walker. If I can follow up on Judge Walker's point, isn't this somewhat of a misnomer? Haven't they, well, they created this board and then called it the wrong name for eight years, which is basically what Judge Walker, I think, was saying. Again, doesn't the law take into account misnomers? As a matter of fact, the review shall be dismissed for lack of jurisdiction based upon a misnomer of an agency, board, or commission, or party. So I mean, mistakes happen. Now, I don't know why they kept doing it, but isn't this a misnomer? It's not a misnomer, and here's why it's not a misnomer. Okay, one, okay, if we look, if we, let me strike the one and begin with this, okay. We have an eight-year run, okay, an eight-year run, and in this eight-year run, right, we have these three gallant gentlemen who, according to the defendant, are mistakenly calling themselves the Board of Fire and Police Commissioners, okay. You know what? There's a saying which every one of us knows, okay. The old phrase, leave well enough alone, leave well enough alone, that rings so loudly in this case, and I'll tell you why. The defendant should have walked away at that point. They should have said, we beat Cooper, we beat Skatchel, but no, the defendants walk in, and they look Judge Meyerson in the face, and they say, guess what, Judge, resolutions trump ordinances. We intended, we intended as a municipality, right, as a board, okay, to use a resolution to kill an ordinance. Well, Naperville, the Naperville Union case tells us they can't, and there's a whole bunch of cases, Naperville is the latest case, so we have a progeny, we have, we have many, many cases that say resolutions cannot trump ordinances. So Melrose Park was, they were in the, you know, in the winning position. I mean, they were winning the fight, but instead of sticking with the name game excuse, it had to go where it shouldn't have gone, and it went to, we used the resolution to kill an ordinance. Mr. Cooper, can I ask a question? Sure. Can the appellate court affirm the trial court on any basis contained in the record? Not in my opinion, because the way I see it, You've answered the question. The way I see it is that the, when the defendant raised the, or made the argument that the resolution, right, or resolutions trumped 1613, we were in brand new territory, and something that the court has to consider. If we go back to resolution 47-2, 47-2 was in May of 2012, obviously before July, when 1613 was enacted. So if we go back to 47-2, which the subsequent resolutions post-1613 were supposed to sort of connect to, have some sort of nexus to, the problem is 47-2 aligns itself with 67 ILCS-5, right? And right now the defendants are saying, oh, no, no, no, we're a home rule jurisdiction, and we're not going to abide by Illinois statute in that regard. And then 47-2 refers to the Board of Fire and Police Commissioners, as do the subsequent resolutions. Judge Griffin, I think you're trying to ask me a question. Well, I'm trying to tell you your 10 minutes are up. Oh, well, maybe if I can just throw in a, I'll let Pat go. Pardon? Pat O'Connor, a good friend of mine and opposing counsel, I'll let him go. Okay. Thank you. Okay. Thank you, Mr. Cooper. Justices, may it please the court. So getting back to kind of the first question that was asked here, Mr. Skatchel was hired by the same group of three people. It's Mike Caputo, Pat Esposito, and Mark Rossi. They were the Board of Fire and Police Commission, uh, succeeded by the personnel board. Uh, and so he was hired by them. The hearing was before them. The termination, although Mr. Cooper talks about the termination, this case, that that's a separate case. It has not made it to the appellate court yet. Uh, it's still pending in the circuit court, the administrative review of his termination, uh, and the hearing. But this case is only about whether this board had, uh, authority or jurisdiction to hear the charges in the first place. Um, so Mr. Cooper has said that resolutions, uh, can't trump an ordinance that these resolutions were of no consequence. Um, but there is authority that we cited in our brief that, um, it's a Summers versus Village of Glenview where they say that, uh, we think the plaintiffs argue for an overly technical interpretation of the term exercise when they insist the adoption of an ordinance is a superseding exercise of home rule power while a vote at a trustee's meeting is not. And so our position is that the resolution can trump an ordinance. That's exactly what the trial court determined, uh, that the resolution, um, uh, trump, the ordinance reinstated the, uh, the fire and police commission. Um, but you know, there's also the kind of an overarching concept here that the, the board of fire and police commission and the personnel board are separate entities with separate duties, separate obligations. That's not at all what the ordinance 1613, which plaintiff attached to this complaint. Establishes what that ordinance establishes is that, um, number one, the same members of the board of fire and police commission that were existing at the time that ordinance passage became members of the personnel board. Uh, number two, they, they assumed all the powers and duties of the fire and police commission, which included the authority to hear charges like the ones brought against Mr. Sketchel. And so the charges that they, what we're talking about here is the authority to hear the charges. The charges were heard by the same three individuals who hired him in the first place, who were appointed pursuant to ordinance, who were given the power to hear the charges and who did in fact, hear the charges, all the, I'm sorry. Sure. Um, and I appreciate what you're saying. And I, I, I think I know what your answer is going to be and what your argument is, but, um, you know, the, the new ordinance has no fewer than five, right? 1613 said that the board should have no fewer than five and that they should all at three years in the state. Could you address that? Is, doesn't that get to be a more substantive issue as to the validity of these people voting? It was my recollection. Uh, and I apologize. I don't have the ordinance right in front of me, but it was my understanding that the appoint, uh, two additional members to bring it up to five or something. No more than that. I agree. It said no more than five. It didn't say it had to be five. It said no more than five. So, right. And so he didn't, that power was never exercised by the mayor and the village trustees. And so, uh, our position is that the, the three, uh, are, is, is the board, either one, it's either the board of fire and police commission or it's the personnel board. And although Mr. Cooper says that it's more than just a different name, it's not really substantively more than a different name. And so as we argue in our brief, it's not that there's, it's a rose by any other name. I mean, what he's saying, what he has to establish in this case is that the, the, the people who heard the charges against him did not have authority to hear those charges. And that's really belied by the ordinance itself that he's attached to the complaint. Um, that establishes that they do have the authority to hear these charges. These three individuals are the same. Now they call themselves by the quote unquote, wrong name. They call themselves by the, as the board of fire and police commission. That's what was listed in the caption instead of the personnel board. And really that's what the case boils down to that. If they had put, uh, uh, in rate charges against John's schedule and the caption said before the personnel board, instead of before the fire and police commission, uh, we wouldn't be here because he cannot show, which is what he has to show that this, these three members of the board and the board only acts when you talk about the board, as I talking about a city, they only act through its members. A city acts through its, uh, employees, but, but they are the board. They're the board, whether they're called the, the fire and police commission. I had my hand up, but you couldn't see it. So I have to interrupt you. You do agree that the ordinance abolished the board of fire and police commissioners, correct? That's what it says. You do you agree? Okay. So, but the decision was made by the board of fire and police commissions. Right. So how does a board that doesn't exist make decisions? Well, I, what, this is what I'm saying. I'm saying that the board, the personnel board was doing business as the board of fire and police commission, but no decision has been made by the personnel board. In fact, all of the documents clearly show that the decision is coming from the board of fire and police commissioners. Correct. Correct. And I'm saying, so how do you want to just say, oh, well, it just doesn't matter. Well, I mean, some things do matter. And if that, if, if, if I have, if we're before the, the, the, the board of, of residence commissioners and decision comes from the board of citizenry commissioners, then there's no decision from the board of residents. Well, that's true. But what I'm saying is that the, the board of fire and police commissioners was abolished. It became the personnel board. And the, the issue isn't whether those members had the authority to hear the charges. It's whether they use the wrong name. And as we're saying that one of our arguments is that it's, uh, they're just using the wrong name, but it doesn't go to their jurisdiction. Well, that's right. You're making arguments. They use the wrong name. Well, someone else may argue that the proper board was not sitting here in the case. And in our case, the proper board, he says we should be the board of fire and police commission. It's those, it's the same individuals who hired him in the first place. They called themselves the board of fire and police commission when they hired them. And that was prior to the ordinance. So that, that, that's what they were. It's like calling the Sears tower, the Willis tower, a lawsuit that you call it what it is at the time. Yeah, but he was hired after it became the personnel board. But they were still calling themselves back then the fire and police commission. I mean, that's who hired him. He was hired by the personnel board who called themselves the board of fire and police commissioners and he was subsequently terminated by the police board, by the personnel board who calls themselves the board of fire and police commissioners. Correct. Okay. You can continue. Okay. If you want a name change or abolishment or, or whatever it wants to be called, he was tired after that. And he was also fired after that. But, um, so like I said, one of our positions is that the, it's, it's really, uh, all it is is a name change. They called themselves by the wrong name, but what he has to show is that the people who constituted that board didn't have the authority to hear the charges. And they clearly did have the authority to hear that they had it, that they had that authority, uh, as members of the fire and police commission. They had that authority, uh, in the successor of the fire and police commission, the so called personnel board. So plaintiff does not dispute them. Melrose park is a homeroom municipality. He does not dispute that they have the authority to create a personnel board. He does not dispute that the village appointed, uh, Mike Caputo, Pat Esposito and Mark Rossi to that personnel board. And he doesn't dispute that those three individuals in fact presided over the hearing. So what his argument in the court below is that, uh, a, an administrative body can only act, uh, pursuant to legislation. And in this case, they did act pursuant to that legislation. The legislation appointed them as members, uh, and gave them the authority to hear charges against misbehaving, uh, police officers as, as Mr. Schedule is alleged to have been. And so, you know, just right out of the gate, he did not establish that these three individuals, whatever they calling themselves did not have the authority to hear, uh, the charges against them. And I'm not saying that the, the variance in the use of the name didn't engender some confusion. It certainly did. But I don't think that confusion goes to their jurisdiction to actually hear the charges against Mr. Schedule. And in fact, like I said, they did hear those charges. So, um, and again, just getting back to the, to the resolution issue, trumping the ordinance in our view, uh, that's the basis of the trial course decision. We believe that the case should be affirmed on that basis. But, uh, even if, uh, um, Mr. Cooper's, uh, argument is accepted that those resolutions were a nullity because they attempted to appoint somebody to a, to an abolished, um, entity. He's still stuck with the existence of an ordinance. He says, he says that the personnel board created by an ordinance can only be abolished by an ordinance. Well, it was never, if it was never abolished, uh, that entity still remains existing. The members remain as members of that, of that body. And they have the authority to hear the charges as they did in this case. So, um, it, under either scenario, if, if, if, uh, the Mr. Schedule's argument is that the, the resolutions did not revive the board of fire and police commission and appoint members to it, then you have 1613 that was not, not abolished by a light ordinance that still exists. It's members are still members of that board. They were given the authority pursuant to legislation to hear the charges against Mr. Schedule. They did in fact hear the charges against Mr. Schedule. Uh, and so, you know, to me that under either scenario, even if the, if Mr. Cooper is correct, that the trial court error in determining that the resolutions revived the board of fire and police commission, uh, he still can't avoid the impact of the ordinance itself, which created and appointed these three individuals, uh, and gave them the So, um, and just going back to, uh, I'm sorry. What does the village call it today? As we sit here, I think they still call it the, I think they still are, uh, it's still called the board of fire and police. They call themselves the board of fire and police commission that is Mr. Cooper pointed out. They, they in budget documents, they call it the board of fire and police commission, the FOIA officer, uh, said that there isn't a personnel board. There is a board of fire and police commission. And so I think the, just, uh, out of, uh, because of its historic use, like some people still call the Willis tower, the Sears tower. I think they still call that those group of three people, the board of fire and police commission, although technically those three people weren't necessarily responsible for the name change was the village that was responsible for the name change. And they're still in their resolution, still calling it the board of fire and police commissioners. Why make the name change? If you're not going to stop calling what you're changing it from. Yeah. I mean, on that point, I think I can agree with Mr. Cooper. If it's not broke, don't fix it. But, uh, I think the, the, and I can't talk to the legislative history of why it was, why the ordinance was passed in the first place, but I think just based upon the differences in, uh, between the, uh, requirements of the fire and police commissioners act, which is Mr. Cooper alluded to earlier require a political diversity. So you can only have so many people from one party, uh, and then you have to have a member from another party and then the staggered terms. So that this ordinance, so you're saying that they made the change to skirt state law and then continue to call calling it what it previously was, because it seems to me that the board of personnel would have more authority than the board of fire and police to the extent that the board of fire and police would only cover firefighters and police officers. The board of personnel may cover anyone who works for the village. Yeah. And I don't, I don't think it's a, it was a matter of trying to skirt the, uh, state law. They, uh, a homeroom municipality can pass legislation deviating from state law, like they did in striker versus a village of Oak park. And so I think with the exception of having people from different political parties and having staggering terms, they can't, they, the, the home rule doesn't get to change that. Well, the home rule does get to change staggered terms and different political parties. They can, they can dispense with that requirement. They can also under, uh, Peg Leaney versus, um, uh, city of Chicago. I think they have a home rule. They could appoint a hearing officer. Uh, I'm not sure that that's contained in the ordinance. I think one other substantive difference in the ordinance between, uh, the ordinance and the fire and police commissioners act is that, uh, the provision at that time, the fire and police commissioners act did not permit lateral hires without going through the process before the board of fire and police commission, which is written test interview, things like that. Uh, state law. Now the fire and police commissioners act does now allow for that, but I think at the time, uh, it did not. And so that was the only, to my recollection, the only other substantive change, no state, uh, no requirement of staggered terms, no requirement of political balance and lateral hires. Those were the substantive changes in the ordinance. Vis-a-vis And they added to commission. Potentially, right. They could go up to five. Correct. And they never did that. They kept the same three and they were, uh, appointed into the personnel board. Correct. I mean, it, it became the personnel board. Um, the, the same three have always been on from day one, right? Well, Dave, I mean, certainly before my time when the ordinance was passed, right. They, they, they predated, uh, 20 by a number of years, uh, 2012. Yeah. So they, the, the ordinance says that they shall serve until their successors are appointed and qualified. So is that if, if some new person, that might be an argument that they wouldn't be appropriate, but are you saying because of that, these three, uh, are, are empowered? Yeah, I'm saying that they never lost the power. These three individuals never lost the power to hear the charges against Mr. Schedule. They had it as, as commissioners. Uh, they have, they had it under the personnel board. They, they had it. And like I said, you can talk about the board itself. Uh, it's akin to maybe putting the wrong caption on a lawsuit and saying, this is the DuPage County instead of Cook County. But when it's signed by a Cook County judge, uh, you don't get to go on a court later and say this had the wrong caption on it. So it's, it's not an effective judgment. Um, so the, they had, they have, they have always had the authority, these three people to hear the charges. They had it before the ordinance was passed. They had it after the ordinance never took effect. It seems to be one of the arguments Mr. Cooper's making. If it never took effect in there, they had it as the board of fire and police commission. Uh, and so I don't think, I mean, I think that the main grab them into this complaint is they use the wrong name. And, uh, to me that does not deprive them of the jurisdiction to hear it because they had it before they had it after the same, the same three people. Okay. Thank you. Anybody else have anything? Okay. Thank you, Mr. Cooper. Your Honor, it's not simply about a name. And I asked this court to take judicial notice of the 1855 change where the district court was in fact abolished. I mean, I think it's a wonderful analogy to drive home the point. This board signed subpoenas. This board issued multiple orders time after time after time. This wasn't a simple name game issue. The name game issue came up when officer schedule brought an action in the court. I do want to emphasize how important it is when a court or a board signs its name to a document, what that represents. And I don't think anyone in this room can assert that if a court, uh, you know, let's say the court asserts it's calling itself by the wrong name, but it doesn't exist because it was abolished like the district court of Illinois. How can that court sign as the district court of Illinois? Moving on, let's say defendants are correct. And there are multiple defendants in this case. Let's say Mr. O'Connor's argument is correct. That schedule cannot win today because everything just goes back to the way it was. Well, it's very, very clear from my filings. It should be crystal clear. The board was illegal back to 2010. So if we take what Mr. O'Connor said today and we wrap our arms around it and we won with it, we have a fundamental problem. The court was in violation of 67 ILCS 5. Between 2010 and that crucial day in July of 2012, the board was supposed to be staggered, uh, staggered terms. There was supposed to be, uh, folks from different political parties. That wasn't the case. So if this court wants to take Mr. O'Connor's argument, let's do it. Let's do it right now because schedule will prevail. The board was illegal before 2012. And I am one of the attorneys in the Goral case. I argued before the Supreme Court recently. Not to say that I'm a know-it-all, but I think I'm really tied into this notion of when a board is illegal. This board was illegal from at least 2010 to that fateful July date in 2012. Now, I do want to turn the court's attention to 2.76070. 2.76070 is part of the Melrose Park Municipal Code. And guess what? It has not changed. And it says, I won't read the whole thing, but in part, the term of each member of the personnel board shall be for three years. All members shall serve until their successors are appointed, right? Appointments shall be staggered. It says it right there. So here we have the 2.76.70. It's still alive and well. This is one of the things I made clear to the circuit court. We have to consider that if we go back to status quo, if Mr. O'Connor is right, we still prevail today. We prevail because the board was illegal pursuant to 67 I.L.S. 5. And let's not forget, if you look at the charging documents, if we look at the Board of Fire and Police Commissioner rules, by the way, there's no personnel rules, but we have a Board of Fire and Police Commissioner rules. If we look at those rules, we see that the charges against officer schedule, okay, are directly linked to 67 I.L.S. 5. So the defendants are saying, guess what? Okay, we're a home rule municipality. We're doing our own thing and we don't have to abide by 67 I.L.S. 5. But yet you have 2.76.070, which makes crystal clear what the personnel board must do. I want to make sure I covered everything. Does anyone have any questions as I look closely at my notes to make sure I haven't forgotten anything? Council, that 2.76.070 says, one, they must serve until their successors are appointed and qualified. I got you. Two, appointments must be staggered. Which controls? Staggered. And why? State law. And again, this board doesn't in any way hide the fact that it is abiding by 67 I.L.S., I.L.C.S. 5. There's no question about it. I mean, it's almost as if the board wants to have its cake and eat it too, as the old saying goes. Okay. Make sure I've covered everything here. Okay. I do want to ask the court to take judicial notice of two ordinances. I certainly can make a paper filing if necessary. The court should have access to the Melrose Park Municipal Ordinances, but one is 1.04.160 entitled ordinances, repeal of, hyphen, repealing ordinances. And the first line reads, when an ordinance repealing any form of ordinance, clause or provision shall be itself repealed. Such repeal should not be construed as to revive such formal ordinances or provision unless shall be, or shall be therein so expressly provided. And then 1.04.170, repeal of an ordinance. These two municipal code entries are relevant to simply say that Melrose Park is sort of, it's contradicting itself. So on the one hand, it has a municipal code that says, you know, X and then Melrose Park says Y. I have nothing else to offer at this time. I see nobody's hand up. So we'll end our hearing right now. Thank you so much. Great job. We really appreciate your work. And you'll be hearing from us shortly.